**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

IN RE:  LOST KEY PLANTATION
LIMITED PARTNERSHIP,
_____

WCI COMMUNITIES, INC.,

                        **Appellant,**

-vs-                                                **Case No.  6:07-Cv-710-Orl-31**
                                                  **(Bankruptcy Case #6:02-bk-11497-KSJ)**

RODERIC M. WRIGHT a/k/a Rod Wright,

                        **Appellee.**
_____

## ORDER

This matter came before the Court on the appeal filed by WCI Communities, Inc. ("WCI") of the Bankruptcy Court's order of March 30, 2007 granting summary judgment to Roderic M. Wright ("Wright").  In deciding this appeal, the Court has considered WCI's initial brief (Doc. 13) Wright's response brief (Doc. 18), and WCI's reply brief (Doc. 18).

**I.     Background**

The underlying facts in this dispute are largely undisputed.  Wright is a real estate broker. In 2001, he attempted to broker the sale of some real property located in Perdido Key, Florida (the "Lost Key Property") that was owned by the Debtor in the instant case, Lost Key Plantation Limited Partnership ("Lost Key Plantation").  One of the prospective purchasers Wright approached was WCI.  Wright required a WCI representative to sign a "Non-Disclosure/Non-Compete Agreement" (the "Confidentiality Agreement") before providing WCI with certain

information about the Lost Key Property. Doc. 5-7 at 2. Shortly thereafter, the WCI representative informed Wright that WCI was not interested in the Lost Key Property.

In October 2002, Lost Key Plantation filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code. While the bankruptcy was pending, Wright attempted to negotiate a purchase of the Lost Key Property, both on behalf of the Debtor and as a participant in an entity set up to buy the land. None of these efforts resulted in a sale. After being contacted by the debtor's limited partner, Champion Development Management Company, Inc. ("Champion"), WCI re-entered the picture. Champion submitted a plan under which WCI would purchase the Lost Key Property. On October 9, 2003, the Bankruptcy Court entered an order confirming Champion's plan (the "Confirmation Order"). Prior to the entry of the Confirmation Order, no entity informed the Bankruptcy Court of the existence of the Confidentiality Agreement or suggested it was relevant to WCI's purchase of the Lost Key Property. (Doc. 5-7 ast 3).[1]

On June 1, 2004, Wright sued WCI in Escambia County Circuit Court, alleging that WCI's purchase of the Lost Key Property violated the Confidentiality Agreement. Wright subsequently amended his complaint in that case to add a claim for unjust enrichment. WCI responded by filing an adversary proceeding in Bankruptcy Court, arguing that the res judicata effect of the Confirmation Order barred Wright's suit. (Doc. 5-7 at 6). Both sides filed motions for summary judgment in the adversary proceeding. The Bankruptcy Court denied WCI's motion and granted

---

[1] By August 2003, the individuals Wright had dealt with regarding the Lost Key Property had left WCI. However, prior the entry of the Confirmation Order, Wright advised WCI's attorney of the existence of the Confidentiality Agreement. (Doc. 5-7 at 4). Wright was involved with several of the entities that had proposed competing plans to purchase the Lost Key Property, and he was aware of WCI's role as buyer of that property under Champion's plan. (Doc. 5-7 at 5).

Wright's, concluding that the Confirmation Order did not bar Wright's state court claim because it did not arise out of the same nucleus of operative facts considered by the Court during the confirmation process. (Doc. 5-7 at 1). This appeal followed.

## II.     Legal Standards

### A.     Bankruptcy Appeals

In an appeal of a decision of the Bankruptcy Court, this Court sits as an appellate court. When reviewing the Bankruptcy Court's findings of fact, this Court applies the clearly erroneous standard. *In re Williamson*, 15 F.3d 1037, 1038 (11th Cir. 1994); *Capitol Indem. Corp. v. Heidkamp*, 312 B.R. 437, 439 (M.D. Fla. 2003); Fed. R. Bankr. P. 8013 ("Findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses."). This Court does not make independent factual findings, as that is the function of the Bankruptcy Court. *Williamson*, 15 F.3d at 1038; *In re Goerg*, 930 F.2d 1563, 1566 (11th Cir. 1991). "A finding of fact is clearly erroneous when, although there is evidence to support it, the reviewing court on review of the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Lightner v. Lohn*, 274 B.R. 545, 548 (M.D. Fla. 2002); *see also Capitol Indem.*, 312 B.R. at 440 (same). The burden of showing clear error falls on the party seeking to overturn the Bankruptcy Court's findings. *In re Caribbean K Line, Ltd.*, 288 B.R. 908, 911 (S.D. Fla. 2002).

This Court reviews the Bankruptcy Court's conclusions of law under a de novo standard. *Williamson*, 15 F.3d at 1038; *Goerg*, 930 F.2d at 1566. Under de novo review, this Court independently examines the law and draws its own conclusions after applying the law to the facts

of the case, without regard to decisions made by the Bankruptcy Court. *In re Piper Aircraft Corp.*, 244 F.3d 1289, 1295 (11th Cir. 2001) ("De novo review requires the court to make a judgment independent of the bankruptcy court's, without deference to that court's analysis and conclusions."). Res judicata determinations made by a bankruptcy court are reviewed de novo. *Id.*

### B. Res Judicata

Under the doctrine of res judicata or "claim preclusion", a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action. *Federated Dept. Stores, Inc. v. Moitie*, 452 U.S. 394, 398, 101 S.Ct. 2424, 2428, 69 L.Ed.2d 103 (1981). Res judicata relieves parties of the cost and vexation of multiple lawsuits, conserves judicial resources and, by preventing inconsistent actions, encourages reliance on adjudication. *Allen v. McCurry*, 449 U.S. 90, 94, 101 S.Ct. 411, 415, 66 L.Ed.2d 308 (1980). A party seeking to invoke res judicata must establish four elements:

> First, the prior judgment must be valid in that it was rendered by a court of competent jurisdiction and in accordance with the requirements of due process. Second, the judgment must be final and on the merits. Third, there must be identity of both parties or their privies. Fourth, the later proceeding must involve the same cause of action as involved in the earlier proceeding.

*In re Justice Oaks II, Ltd.*, 898 F.2d 1544, 1550 (11th Cir. 1990) (internal citations omitted). A bankruptcy court's order confirming a plan of reorganization is given the same effect as any district court's final judgment on the merits. *Id.* A "party," for purposes of former adjudication, includes all who are directly interested in the subject matter and who have a right to make defense, control the proceedings, examine and cross-examine witnesses and appeal from the judgment if an appeal lies. *Id.* at 1550-51. "Thus, one who participates in a chapter 11 plan confirmation proceeding becomes a party to that proceeding even if never formally named as such." *Id.* at 1551.

Claims are considered part of the same cause of action for res judicata purposes when they arise out of the same transaction or series of transactions. *In re Piper Aircraft* at 1296-97 (citing *Justice Oaks* at 1551). "'In determining whether the causes of action are the same, a court must compare the substance of the actions, not their form. It is now said, in general, that if a case arises out of the same nucleus of operative fact, or is based upon the same factual predicate, as a former action, that the two cases are really the same 'claim' or 'cause of action' for purposes of res judicata.'" *Id.* (quoting *Ragsdale v. Rubbermaid, Inc.*, 193 F.3d 1235, 1239 (11th Cir. 1999)).

After making the initial determination that all four of the preceding elements are present and that res judicata may therefore be invoked, the court next determines whether the claim in the new suit was brought or could have been raised in the prior action. If the answer is yes, res judicata applies. *In re Piper Aircraft* at 1296. However, for res judicata purposes, claims that "could have been brought" are claims in existence at the time the original complaint is filed or claims actually asserted by supplemental pleadings or otherwise in the earlier action. *In re Piper Aircraft* at 1299 (citing *Pleming v. Universal-Rundle Corp.*, 142 F.3d 1354 (11th Cir. 1998)).[2] At all times, the burden is on the party asserting res judicata to show that the later-filed suit is barred. *Id.* at 1296.

### III.   Analysis

WCI contends that the Confirmation Order bars Wright's claims for breach of the Confidentiality Agreement and unjust enrichment. There is no dispute as to whether the

---

[2]In *Pleming*, the Court found that res judicata did not bar two employment discrimination claims that resulted from hiring decisions made during the pendency of an earlier (and unsuccessful) suit by the plaintiff against her employer, where the plaintiff had referred to those claims but had not actually raised them in the earlier suit. *In re Piper* at 1298.

Confirmation Order was entered by a court of competent jurisdiction in accord with the requirements of due process, or whether the Confirmation Order constitutes a final judgment on the merits. Thus, the first two elements of res judicata are present. The parties disagree as to Wright's role in the bankruptcy case and, therefore, as to whether the third element is present. However, because this Court agrees with the bankruptcy court that the two proceedings do not involve the same cause of action, it need not resolve the "identity of parties" issue.

In its brief, WCI primarily relies on the case of *Daewoo Motor America, Inc. v. General Motors Corp.*, 459 F.3d 1249 (11th Cir. 2006). In that case, Daewoo Motor Co., Ltd. ("Daewoo Korea") filed for bankruptcy protection in Korea. Daewoo Motor America ("Daewoo America") was a wholly owned subsidiary of Daewoo Korea. *Id.* at 1251-52. Daewoo America was a creditor in Daewoo Korea's bankruptcy case and possessed the exclusive right to distribute Daewoo-produced vehicles in the United States. *Id.* at 1251-52. As part of its "Modified Reorganization Plan", Daewoo Korea entered into a Master Transaction Agreement (the "MTA") to form a new entity ("GMDAT") with General Motors; GMDAT would acquire the assets of Daewoo Korea and produce vehicles to be distributed in the United States by GM. *Id.* at 1253-54. Despite being aware that it would lose its exclusive distribution rights under the Modified Reorganization Plan, Daewoo America did not vote against it or take any other steps to raise its claims in the Korean court. *Id.* at 1254.

After the Modified Reorganization Plan was confirmed and GM began to sell the GMDAT-produced vehicles in the United States, Daewoo America filed fraud, tortious interference, unjust enrichment and similar claims in the United States against GM. *Id.* Eventually, those claims ended up before this Court, which dismissed them with prejudice on the

-6-

grounds of international comity as a collateral attack on the Korean bankruptcy proceedings. *Id.* at 1255.

The United States Court of Appeals for the Eleventh Circuit affirmed the dismissal. As part of its analysis, the appellate court found that this Court did not abuse its discretion in determining that the claims of Daewoo America were "intertwined" with the order of the Korean court approving the Modified Reorganization Plan. Daewoo America had argued that its claims did not arise out of the same nucleus of operative facts considered by the Korean court. With little explanation, the appellate court found that Daewoo America's claims were based on the Modified Reorganization Plan.

WCI argues that the facts in *Daewoo* parallel those in the instant case and therefore Wright, like Daewoo America, is barred from pursuing any claims arising from the (court-approved) plan and the sale to WCI. (Doc. 13 at 16). However, WCI's argument fails. Wright's claims were not at issue in the bankruptcy proceedings here. Wright's claim arises from the Confidentiality Agreement, not simply from WCI's acquisition of the Lost Key Property. The Confidentiality Agreement was never put at issue before the bankruptcy court. (Doc. 5-7 at 14).

As the bankruptcy court recognized, the instant situation more closely resembles the situation in *In re Piper Aircraft* than it does the situation in *Daewoo*.³ (Doc. 5-7 at 14). In the *Piper Aircraft* case, Kaiser Aerospace and Electronics Corp. ("Kaiser") and Teledyne Industries,

---

³WCI repeatedly suggests that *Daewoo* overruled or, at a minimum, substantially departed from the res judicata analysis of *Piper Aircraft*. (Doc. 19 at 2). A review of the *Daewoo* opinion finds no support for this contention. To the contrary, the *Daewoo* court explicitly distinguished the *Piper Aircraft* case, and never suggested it was no longer good law. *See id.* at 1259 (stating that Daewoo America's reliance on *Piper Aircraft* was "misplaced"). The *Daewoo* court reached a different conclusion because the facts before it were different, not because the law had changed.

Inc. ("Teledyne") agreed to form an entity to purchase most of the assets of the debtor.  *Id.* at 1292.  Relations between the two broke down, and Teledyne joined forces with another company, DS&P.  *Id*. at 1292-93.  After the bankruptcy court approved the sale to the entity ("New Piper") formed by Teledyne and DS&P, Kaiser sued Teledyne in state court for breach of their agreement, seeking among other things an ownership interest in New Piper.  *Id.* at 1293.  Teledyne sought a declaratory judgment in bankruptcy court that res judicata barred Kaiser's suit.  *Id.* at 1294.  However, the United States Court of Appeals for the Eleventh Circuit determined that Kaiser's claims did not arise from the same nucleus of operative fact as the bankruptcy proceeding – or, more specifically, the plan confirmation process.  The court agreed with Kaiser's contention that "the facts underpinning the state court action (i.e., Teledyne's alleged breach of the [agreement with Kaiser] and its fiduciary duties to Kaiser) were *not* at issue in the confirmation proceeding; the bankruptcy court did not consider, and was not required to consider, any factual dispute relating to its stake in the ownership or capital structure of New Piper when confirming the Teledyne/DS&P plan."  *Id.* at 1297 (emphasis in original).  The appellate court found that the bankruptcy court did not discuss and the parties did not litigate the "critical facts" underlying Kaiser's suit, and that this was "powerful evidence" that the bankruptcy case did not involve the same cause of action as the state court suit.  *Id.*

The appellate court also rejected Teledyne's argument that Kaiser's suit involved the ownership and capital structure of New Piper, two topics that were necessarily considered by the bankruptcy court.  *Id.* at 1299.  The court noted that the res judicata effect of a confirmed plan is premised on the notion that the bankruptcy court has addressed in the confirmed plan and order only those issues that are properly within the scope of the confirmation hearing.  *Id.* (citing *In re*

*Seidler*, 44 F.3d 945, 948 (11th Cir. 1995)). "The confirmation process in a Chapter 11 case is primarily an inquiry into the viability of the proposed plan and the disposition of the debtor's assets, not the conduct of unrelated third parties." *Id.*

In *Daewoo*, the proposed plan depended upon GM's right to distribute vehicles in the United States in place of Daewoo America, and therefore Daewoo America's claim that, in essence, it still retained that right arose from the same nucleus of operative fact considered by the bankruptcy court.[4] In *Piper Aircraft*, the bankruptcy court was not called on to assess Teledyne's alleged breach of its agreement with Kaiser, as such a breach would not affect the viability of New Piper or the distribution of the debtor's assets. In the instant case, as in *Piper Aircraft*, the bankruptcy court was not called on to assess WCI's alleged breach of the Confidentiality

---

[4]"[T]he facts underpinning the complaint of Daewoo America against the defendants were at issue in the Korean proceeding because those facts relate to the approval of the Modified Reorganization Plan and the MTA. The claims of Daewoo America rely entirely on the invalidity of the transactions approved by the Korean court." *Daewoo* at 1259-60. The Court also notes that, unlike the situation in *Daewoo*, Wright is not seeking to undo the transfer of the debtor's assets.

Agreement, and WCI has not shown that such a breach would affect the viability of the confirmed plan. As such, it is clear that Wright's claim does not arise from the same nucleus of operative fact as the Confirmation Order, and res judicata does not bar his claim. In consideration of the foregoing, it is hereby

**ORDERED** that the Bankruptcy Court's Order of March 30, 2007 is **AFFIRMED**.

**DONE** and **ORDERED** in Chambers, Orlando, Florida on June 13, 2007.

GREGORY A. PRESNELL
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Party